**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| **ELEAZAR VEGA,**<br>2228 Rosswood Blvd.<br>Indianapolis, IN 46229<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**SELENE FINANCE, LP,**<br>c/o Corporation Service Company<br>135 North Pennsylvania St., Ste. 1610,<br>Indianapolis, IN, 46204<br><br>　　　　　Defendant. | Case No. 23-cv-150<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Eleazar Vega, through counsel, for his *Complaint for Damages* against Defendant Selene Finance LP, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Eleazar Vega ("Plaintiff") is the owner of residential real property, located at and commonly known as 2228 Rosswood Blvd., Indianapolis, IN 46229 (the "Home").

2.    Plaintiff purchased the Home as his primary, principal residence and has maintained the Home as such at all times relevant to the allegations contained herein.

3.    Defendant Selene Finance, LP ("Selene" or "Defendant") is a foreign limited partnership organized under the laws of the State of Delaware that maintains its headquarters and principal place of business at 3501 Olympus Blvd, Suite 500, Dallas, TX 75019.

4.    Selene is the current servicer of a note executed by Plaintiff (the "Note") and of a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan"), having obtained servicing rights to the Loan from Shellpoint Mortgage Servicing, effective January 4,

2022. *See*, a copy of the Loan documents, attached as **Exhibit 1**.

5.      Selene currently services the Loan on behalf of the current creditor, owner, and/or assignee of the Loan—an entity other than itself previously identified as and believed to be U.S Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust (the "Trust").

6.      Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA") and Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq*.

7.      This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

8.      Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

**SUMMARY OF CLAIMS**

9.      This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq*. ("Regulation X").

10.     The CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010), specifically the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

11.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

12.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

13.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14.     Selene is subject to the aforesaid regulations and is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

15.     Plaintiff asserts a claim for relief against Selene for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

16.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as "servicing" by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute 'servicing,' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

17.    Plaintiff is a "consumer", as that term is defined by 15 U.S.C. § 1692a(3), and a person affected by a violation of the FDCPA, and other violations, with standing to bring this claim under 15 U.S.C. § 1692.

18.    Selene is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as Selene claimed that the Loan was past due and in default and otherwise treated the Loan as if it were in default at the time it obtained servicing rights to the Loan.

19.    The Loan is a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected by Selene was a residential mortgage the primary purpose of which was for personal, family, or household use.

20.    Plaintiff has a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k, for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## STATEMENT OF FACTS

### (The Modification and Plaintiff's Payments)

21.    Plaintiff entered into a Modification Agreement effective January 1, 2019, with Ditech Financial LLC ("Ditech") modifying the terms of the Loan (the "Modification"). *See*, a copy of the Modification, attached as **Exhibit 2.**

22.    Per the Modification, the terms of the Loan were modified, in part, as follows:

a.    The principal balance was modified to a balance of $162,007.39 consisting of an interest bearing principal balance of $144,880.00 and a deferred principal balance of $17,127.39;

b.    The interest rate was set at a fixed interest rate of 4.625%;

c.  Plaintiff's monthly principal and interest payments were modified to $663.01; and,

d.  The term of the loan was extended for another four hundred eighty (480) months.

23.    Plaintiff timely remitted each payment due and owing pursuant to the Modification through the payment due and owing for the May 1, 2020 payment.

24.    Shellpoint, however, rejected Plaintiff's attempted payment in satisfaction of the May 1, 2020 payment

25.    Shellpoint provided Plaintiff with a transaction history for the Loan generated on or about April 27, 2021 (the "History"). *See*, a copy of such History, attached as **Exhibit 3**.

26.    Per the History, the Modification was fully onboarded and given effect as of around March 15, 2019**.** *See*, Exhibit 3.

27.    Further, the History evidences Plaintiff's payments remitted pursuant to and in compliance with the terms of the Modification through the payment due and owing for the April 1, 2020 payment. *See*, Exhibit 3.

28.    Per the transaction history, Plaintiff remitted the April 2020 payment effective April 30, 2020, and the Loan was thereafter due and owing for the May 1, 2020 payment. *See*, Exhibit 3.

29.    As such, when Plaintiff remitted his payment in and for the month of May 2020, there was no reasonable basis for Shellpoint to reject the same.

30.    Per the History, however, through a series of transactions on or about May 20, 2020:

a.  At least three (3) payments were inexplicably reversed, which caused the Loan, originally paid through at least the April 1, 2020 payment, to be due and owing for the February 1, 2020 payment;

b.  Three (3) transactions were entered to remove an escrow only payment of $1,050.69, remove an interest only payment of $1,653.81, and make a principal adjustment adding $1,013.24 back onto the principal balance of the Loan; and,

c.  The three (3) "reversed" payments were then "reapplied" to the Loan as the payments due and owing for November 1, 2019, December 1, 2019, and January 1, 2020.

31.   That is, despite Plaintiff's remittance of the payments due and owing under the Loan per its modified terms, Shellpoint made multiple accounting adjustments to effectively place the Loan at least three (3) months delinquent and therefore, in default, with no explanation to the Borrower.

32.   As the Loan was now at least three (3) month's delinquent, due to Shellpoint's accounting errors, when the Borrower attempted to remit a monthly payment on the Loan in and for the month of May 2020, Shellpoint rejected the payment demanding instead that the Borrower remit all "past due" amounts.

33.   As Shellpoint, and then Selene, would not accept any payment from Plaintiff unless Plaintiff effectively "double paid" for payments he had already remitted, this has led to a slippery slope whereby foreclosure proceedings have been initiated by the owner of the Loan in the Marion County Superior Court, Case No. 49D02-2209-MF-030849 (the "Foreclosure").

**(Selene's Refusal to Correct Errors)**

34.     As Selene continued to refuse to properly account for Plaintiff's payments, and Plaintiff faced the reality of foreclosure proceedings, Plaintiff sought assistance of counsel to attempt to have Selene correct their erroneous conduct.

35.     On or about September 22, 2022, Plaintiff, through counsel, sent correspondence consisting of or otherwise comprised of a notice of errors captioned "Request for information pursuant to 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(E) and/or qualified written request pursuant to 12 U.S.C. § 2605(e)" ("Selene RFI #1") via Certified Mail [Tracking No. 70151520000166164728] to Selene at its address designated for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). *See*, a copy of Selene RFI #1, without original enclosures, along with the Tracking Information for the same obtained from the USPS's website (www.usps.com), attached as **Exhibit 4**.

36.     Through Selene RFI #1, Plaintiff requested various information and documentation related to the servicing of the Loan including servicing notes, a current transaction history for the Loan,and information related to loss mitigation efforts for the Loan. *See*, Exhibit 4.

37.     Selene received Selene RFI #1 at the Designated Address on or before September 28, 2022. *See*, Exhibit 4.

38.     Selene sent correspondence dated September 30, 2022 to Plaintiff's counsel acknowledging receipt of Selene RFI #1 and stating that Selene would respond within thirty (30) business days of receipt (the "Selene RFI #1 Acknowledgment"). *See*, a copy of the Selene RFI #1 Acknowledgement, attached as **Exhibit 5**.

39.     On or about September 30, 2022, Plaintiff, through counsel, sent correspondence consisting of or otherwise comprised of a notice of errors captioned "Errors pursuant to 12 C.F.R. §§ 1024.35(b)(2) and/or (11) for failing to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law or otherwise failing to properly honor a loan modification agreement and wrongfully claiming or exacerbating a delinquency on a loan" ("Selene NOE #1") via Certified Mail [Tracking No. 70151520000166165473] to Selene at its Designated Address. *See*, a copy of Selene NOE #1, without original enclosures, along with the Tracking Information for the same obtained from the USPS's website (www.usps.com), attached as **Exhibit 6**.

40.     Through Selene NOE #1, Plaintiff alleged that Selene committed a number of errors related to the Loan including, but not limited to:

    a.   Failing to accept Plaintiff's May 2020 payment;

    b.   Failing to properly account for each of the payments Plaintiff remitted pursuant to the terms of the Loan as modified through the Modification;

    c.   Improperly claiming that the Loan is in default and threatening foreclosure despite Plaintiff's acceptance of and performance under the Modification with Plaintiff's performance only being stifled by the wrongful actions of Shellpoint and Selene.

*See*, Exhibit 6.

41.     Selene received NOE #2 at the Designated Address on or before October 12, 2022. *See*, Exhibit 6.

42.     Selene sent correspondence dated October 17, 2022 to Plaintiff's counsel acknowledging receipt of Selene NOE #1 and stating that Selene would respond within thirty

(30) business days of receipt (the "Selene NOE #1 Acknowledgment"). *See*, a copy of the Selene

NOE #1 Acknowledgement, attached as **Exhibit 7**.

43.    To date, Selene has not sent any written correspondence to Plaintiff or his counsel

containing or consisting of a substantive response to Selene RFI #1.

44.    The only further correspondence Selene sent to Plaintiff or his counsel regarding

Selene NOE #1 was correspondence dated November 15, 2022 wherein Selene requested that

Plaintiff:

> [F]orwad legible copies of the trial payments that were met and proof that the borrower started making payments towards the modification stating January 1, 2019. Please forward the following so that it can be researched: front and back copies of canceled [sic] checks, complete bank statements, and/or other documentation supporting your missing payment dispute. Upon receipt of these items we will research the account and notify you in writing of the results.

*See*, a copy of such correspondence (the "Selene NOE #1 Response"), attached as

**Exhibit 8**.

45.    From the face of the Selene NOE #1 Response, it is clear that Selene has failed to

perform a reasonable investigation into the errors alleged by and through Selene NOE #1. *See*,

Exhibits 6 and 8.

46.    Selene mischaracterizes the errors at issue as a "missing payment" dispute when it

is clearly a payment application dispute. *See*, Exhibits 6 and 8.

47.    Moreover, Selene requests that Plaintiff provide copies of all payments to the TPP

and the Modification despite there being no doubt that the Modification was issued,

implemented, and boarded, and despite the proof of all such payments already being within the

transaction history enclosed with Selene NOE #1. *See*, Exhibits 6 and 8.

48.    As neither Plaintiff nor his counsel received any written correspondence

containing of or consisting of a substantive response to Selene RFI #1, on or about December 15,

2022, Plaintiff, through counsel, sent correspondence captioned "Notice of error and/or qualified written request pursuant to 12 C.F.R. § 1024.35(b)(11) and/or 12 U.S.C. § 2605(e) for failure to properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d), 12 U.S.C. § 2605(k)(1)(E),and/or 12 U.S.C. § 2605(e); renewed request for information and/or qualified written request pursuant to 12 C.F.R. § 1024.36(d), 12 U.S.C. § 2605(k)(1)(E), and/or 12 U.S.C. § 2605(e)" ("Selene NOE #2") via Certified Mail [Tracking No. 70151520000166374523] to Selene at its Designated Address. *See*, a copy of Selene NOE #2, without original enclosures, attached as **Exhibit 9**.

49.    Through Selene NOE #2, Plaintiff alleged that Selene committed errors related to the Loan by failing to properly and timely respond to Selene RFI #1 and reissued the information requests contained in Selene RFI #1 anew. *See*, Exhibit 9.

**IMPACT UPON AND DAMAGES SUFFERED BY PLAINTIFF**

50.    Selene has refused to properly account for Plaintiff's payments under the Modification, has wrongfully continued to declare the Borrower to be in default of his obligations thereunder, has explicitly threatened to foreclose his Home, and has allowed for foreclosure proceedings to be commenced, despite his performance under the Modification.

51.    Selene's improper actions caused Plaintiff to suffer from actual damages including, but not limited to:

      a.    The loss of use of and the time loss of the Modification payments that Plaintiff remitted and that Shellpoint, Selene, or the Trust accepted without properly crediting the same to the Loan;

      b.    Legal fees, costs, and expenses to submit Selene RFI #1 and Selene NOE #1, to Selene in a good faith attempt to obtain information related to the Loan and

to amicably resolve this matter or to have Selene mitigate the harm caused to Plaintiff to which Plaintiff did not receive a proper or adequate response;

c. Legal fees, costs, and expenses to submit Selene NOE #2 which would not have been necessary but for Selene's failure to respond to Selene RFI #1;

d. Unwarranted harm to his credit rating and a significant delay in the rehabilitation of his credit for which he has not received proper redress from Selene;

e. Improper fees and charges imposed on the Loan since the wrongful rejection of Plaintiff's May 2020 payment—and the attempted collection of such fees—including default servicing related fees for which Plaintiff is personally obligated or which otherwise negatively impacts any equity in the Home to which he is entitled;

f. Legal fees, costs,and expenses to defend against the Foreclosure; and,

g. Severe emotional distress driven by this wrongfully claimed delinquency and by justified fear that such wrongfully claimed delinquency would lead to the foreclosure sale of his Home unless Plaintiff pay amounts and fees which are not warranted, and despite Plaintiff's payment of amounts actually due and owing, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SELENE**

52.     Selene's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Selene's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

53.     As of the filing of this Complaint, consumers nationwide have lodged one hundred one (101) consumer complaints with the CFPB against Selene, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

54.     As of the filing of this Complaint, consumers nationwide have lodged eighty four (84) consumer complaints with the CFPB against Selene, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

**COUNT ONE:**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)**

**(Failure to timely and properly respond to Selene NOE #1)**

55.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 54 in their entirety, as if fully rewritten herein.

56.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

57.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

58.　　A servicer must respond to a notice of error by either:

(A)　Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)　Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

59.　　A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A)　Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)　Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)　For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

60.　　"A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

61.　　A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be

appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

62.     Selene NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 6.

63.     Selene received Selene NOE #1 at the Designated Address on or before October 12, 2022. *See*, Exhibit 6.

64.     Selene sent the Selene NOE #1 Response on or about November 15, 2022 wherein Selene requested that Plaintiff:

> [F]orwad legible copies of the trial payments that were met and proof that the borrower started making payments towards the modification stating January 1, 2019. Please forward the following so that it can be researched: front and back copies of cancelled [sic] checks, complete bank statements, and/or other documentation supporting your missing payment dispute. Upon receipt of these items we will research the account and notify you in writing of the results.

*See*, Exhibit 8.

65.     Selene has not sent any further correspondence containing or consisting of a further substantive response to Selene NOE #1.

66.     Selene failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Selene did not admit that any errors occurred as alleged through Selene NOE #1. *See*, Exhibit 8.

67.     Selene did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that Selene did not perform a reasonable investigation into the errors alleged through Selene NOE #1 because Selene failed to send any substantive response to NOE #1. *See*, Exhibit 8.

68.     Moreover, from the face of the Selene NOE #1 Response, it is clear that Selene has failed to perform a reasonable investigation into the errors alleged by and through Selene NOE #1. *See*, <u>Exhibits 6 and 8</u>.

69.     Selene mischaracterizes the errors at issue as a "missing payment" dispute when it is clearly a payment application dispute. *See*, <u>Exhibits 6 and 8</u>.

70.     Moreover, Selene requests that Plaintiff provide copies of all payments to the TPP and the Modification despite there being no doubt that the Modification was issued, implemented, and boarded, and despite the proof of all such payments already being within the transaction history enclosed with Selene NOE #1. *See*, <u>Exhibits 6 and 8</u>.

71.     Selene's failure to timely and properly respond to Selene NOE #1 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through Selene NOE #1 constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Plaintiff has suffered actual damages as detailed, *supra*.

72.     Selene's failure to comply with 12 C.F.R. § 1024.35(e) and and 12 U.S.C. §§ 2605(e) and (k) caused Plaintiff's attorneys' fees and costs associated with the preparation of Selene NOE #1 to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

73.     Selene's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

74.     Selene's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

75.    As a result of Selene's actions, Selene is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

76.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO:**
**VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. §§ 2605(e) AND (k)**

**(Failure to timely and properly respond to Selene RFI #1)**

77.    Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 54 in their entirety, as if fully rewritten herein.

78.    RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

79.    "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

80.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

81.    A servicer must respond to a request for information by:

(i)    Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

82.   Furthermore, a servicer must properly respond to a request for information within the following deadlines:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

83.   Selene RFI #1 constitutes a request for information as defined by 12 C.F.R. § 1024.35(a) as it is a written request from Plaintiff that included their names, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 4.

84.   On September 22, 2022, Plaintiff, through counsel, submitted Selene RFI #1 to Selene at its Designated Address. *See* Exhibit 4.

85.   Selene received RFI #1 at the Selene Designated Address on or about September 28, 2022. *See* Exhibit 4.

86.    Selene was required to provide a written response to Selene RFI #1 by November 4, 2022, or within thirty (30) business days of receiving Selene RFI #1. *See* <u>Exhibit 4</u>; 12 C.F.R. § 1024.36(d)(2)(i)(B).

87.    To date, Selene has failed to provide Plaintiffs with any of the information and documents requested through Selene RFI #1.

88.    Selene's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and has caused Plaintiffs to suffer actual damages as detailed, *supra*.

89.    Selene's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) caused Plaintiffs' attorneys' fees and costs associated with the preparation of Selene RFI #1 to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

90.    Selene's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of Selene's obligations under RESPA and Regulation X.

91.    As a result of Selene's actions, Selene is liable to Plaintiff for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

92.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

### COUNT THREE:
### VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.*

93.    Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 54 in their entirety, as if fully rewritten herein.

94.     Plaintiff is a "consumer" as he is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

95.     The Loan is a "debt" as it is an obligation or alleged obligation of Plaintiff's to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of the Home. 15 U.S.C. § 1692a(5).

96.     Selene is a "debt collector" because it regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as the Trust. 15 U.S.C. § 1692a(6).

97.     When Selene acquired the servicing rights to the Loan on or around January 4, 2022, Selene claimed that the Loan was past due and in default and otherwise treated the Loan as if it were in default. *See*, 15 U.S.C. § 1692a(6)(F)(iii).

98.     Selene, through, *inter alia*, mortgage statements and correspondence has treated the Loan as if it was in default.

99.     The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of:

    a.  False representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A));

    b.  The threat to take any action that cannot legally be taken (15 U.S.C. § 1692e(5)); and,

    c.  False representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

100.    Selene violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10), by falsely representing in the notice of default that the Loan was past due for multiple payments and

wholly disregarding Plaintiff's acceptance of and performance under the Modification, wrongfully threatening to file a foreclosure action against Plaintiff, permitting the Foreclosure to be commenced, and falsely representing that Plaintiff owed default servicing fees and other similar fees and charges imposed after Plaintiff acceptance of the Modification for which Selene had no reasonable basis to impose or collect, and by refusing to correct its erroneous actions after having been put on notice of the same. *See*, Exhibit 6.

101.    The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

102.    Selene violated 15 U.S.C. § 1692f through its actions in refusing to properly apply Plaintiff's payments remitted in furtherance of the Modification t and sending correspondence to Plaintiff wrongfully claimed that Plaintiff was in default. *See*, Exhibit 6.

103.    Selene's actions have caused Plaintiff to suffer actual damages, further described, *supra*, including but not limited to requiring Plaintiff to incur attorneys' fees and costs related to the preparation and mailing of Selene RFI #1, Selene NOE #1, and Selene NOE #2 to attempt to have Selene correct its erroneous conduct.

104.    As a result of Selene's conduct, Plaintiff suffered extreme emotional distress driven by the fear that Selene's actions would lead to the foreclosure of, loss of, and eviction from his Home which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

105.    As a result of Selene's actions, Selene is liable to Plaintiff for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

106.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Eleazar Vega prays that this Court grant judgment against Defendant Selene Finance, LP and award him the following:

A.    Actual damages from Defendant Selene Finance, LP in an amount to be determined at trial for the allegations contained in Counts One through Three;

B.    An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Selene Finance, LP for each violation of RESPA contained in Counts One and Two;

C.    An award of statutory damages of One Thousand Dollars ($1,000.00) from Defendant Selene Finance, LP for the violations of the FDCPA contained in Count Three;

D.    For attorney's fees and costs as to Counts One through Three; and,

E.    For such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/Brian D. Flick*
Brian D. Flick (OH #0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com
*Counsel for Plaintiff Eleazar Vega*

## **JURY DEMAND**

Plaintiff Eleazar Vega hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/Brian D. Flick
Brian D. Flick (0081605)
DannLaw
*Counsel for Plaintiff Eleazar Vega*